UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILYNCIA D. GREER,

      Plaintiff,                               Civil Action No. 11-10330

v.                                     HON. MARK A. GOLDSMITH
                                         U.S. District Judge
                                         HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Filyncia D. Greer brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment [DE #10] be GRANTED, and that Plaintiff's Motion for Summary Judgment [DE  #9] be DENIED.

## PROCEDURAL HISTORY

On October 15, 2007, Plaintiff filed a claim for DIB, alleging disability as of May 9, 2007 (Tr. 97).  After the initial denial of her claim, Plaintiff requested an administrative

-1-

hearing, held on September 3, 2009 in Dallas, Texas (Tr. 9, 26). Administrative Law Judge ("ALJ") Walter Orr presided (Tr. 26). Plaintiff, appearing by video conference, was represented by attorney Mr. Ansbach (Tr. 26). Plaintiff testified, as did Vocational Expert ("VE") Evelyn Hartman (Tr. 31-45, 46-49). On October 6, 2009, ALJ Orr determined that Plaintiff was not disabled (Tr. 26). On November 23, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on January 27, 2011.

## BACKGROUND FACTS

Plaintiff, born August 6, 1984, was 25 when ALJ Orr issued his decision (Tr. 26, 97). She completed two years of college and worked previously as a factory worker and machine operator (Tr. 145, 150). Her application for benefits alleges disability as a result of physical and mental conditions caused by a May, 2007 automobile accident (Tr. 144).

### A.      Plaintiff's Testimony

Plaintiff reported that she currently lived with her mother in Ypsilanti, Michigan (Tr. 32). Plaintiff, 5' 8" and 235 pounds, reported that she had gained 50 pounds since ceasing work due to stress, depression, appetite increase, and "no physical activity" (Tr. 33).

Plaintiff stated that on May 9, 2007, she was involved in an auto accident resulting in a brief lost of consciousness (Tr. 34). She stated that she did not initially seek medical treatment, but went to her family doctor two days later for treatment of head, back, and leg pain (Tr. 34). She reported that between May, 2007 and the present, she treated her conditions with epidural injections, physical therapy, and medication (Tr. 34). She stated that she also underwent a decompression and fusion surgery for back problems and had received

-2-

cognitive therapy for the head injury (Tr. 35).  She indicated  physical therapy gave her only temporary relief (Tr. 35).

Plaintiff stated that dizzy spells, fainting, and numbness of the foot prevented her from driving (Tr. 36).  She alleged that she experienced dizziness and fainting on a daily basis (Tr. 37).  She denied that either surgery or epidural injections helped her headaches, backaches, or pain radiating into her lower extremities (Tr. 37).  She stated that a TENS unit and back brace provided limited relief (Tr. 38-39).  She indicated that her most comfortable position was lying on her left side (Tr. 39).  She testified that she was unable to sit or stand for more than 15 minutes before experiencing leg numbness (Tr. 40).  She stated that she experienced dizzy spells if she tried to walk more than half a block (Tr. 40).  Plaintiff opined that she was unable to lift five pounds as a result of back pain and her need to heal following surgery (Tr. 41).

Plaintiff described a typical day as "stressful," noting that she arose at 8:00 a.m. but did not retire until at least 1:00 a.m. (Tr. 42).  She alleged that pain caused sleep disturbances (Tr. 42).  She indicated that she spent her waking hours reading and watching television, but added that since the accident, her reading comprehension had decreased (Tr. 43).  She testified that on one occasion while trying to cook, she became distracted and accidently started a fire (Tr. 44).  She denied performing household chores, but stated that she shopped for groceries once a week without assistance (Tr. 44).  She stated that she currently took Vicodin, Aleve, Motrin, and Tylenol for pain and Lexapro for anxiety (Tr. 45).

   **B.    Medical Evidence**

### 1. Treating Sources

In March, 2006, Plaintiff reported work-related stress (Tr. 175).  In March, 2007, Margaret Mekai-Vekima, M.D. issued a work release for Plaintiff on the basis of "depression, stress, [and] anxiety" (Tr. 328).  Two days after Plaintiff's May, 2007 automobile accident, she complained of pain upon sitting (Tr. 173).  Emergency room records from the following week state that Plaintiff was treated for hypoglycemia (Tr. 172, 188, 304).  Imaging studies of the lumbar spine and brain were normal (Tr. 226-227).  June, 2007 physical therapy notes state that Plaintiff had "an antalgic gait" (Tr. 280).  In July, 2007, MRIs of the lumbar spine showed "mild foraminal stenoses at L4-L5 bilaterally" (Tr. 181, 190, 205, 223).  Plaintiff reported that physical therapy was "not helping" (Tr. 170).  She reported to Luke Y. Kim, M.D. that she was able to drive short distances (Tr. 221).  She reported that she "often faint[ed] at night" (Tr. 221).

The following month, neurologist Erik Sinka, D.O. noted that Plaintiff reported "episodic dizziness about once a week or so" which occurred if she stood up quickly or "ha[d] been standing for a prolonged period of time" (Tr. 192).  She stated that symptoms "resolved" if she sat down (Tr. 192).  Plaintiff admitted to smoking, marijuana use, and occasional alcohol use (Tr. 193).  Dr. Sinka found "post-concussion syndrome" and "mild" disc disease (Tr. 194).  The same month, pain specialist Joan Westbrook, P.A.C. noted that Plaintiff had a normal gait (Tr. 200).  Plaintiff reported that she "was planning on going back to school" (Tr. 200).  She was advised to undergo epidural injections before considering surgery (Tr. 200).

In September, 2007, neuropsychologist Terry L. Bracieszewski, PhD, examined Plaintiff, noting a blunted affect (Tr. 215).   Plaintiff underwent injections without complications in October, 2007 (Tr. 202-203).   Dr. Kim noted that Plaintiff was receiving "cognitive retraining" (Tr. 218).   Dr. Bracieszewski administered a neuropsychology evaluation, noting that Plaintiff made a "good effort" (Tr. 232).   Her speech was unremarkable but she demonstrated "poor receptive language skills" and "difficulty with understanding directions" (Tr. 232).   Her motor skills were "slow and fastidious" (Tr. 232). Various Weschsler Adult Intelligence Scale-Third Edition (WAIS-III) IQs revealed impaired long and short term memory skills and concentrational abilities (Tr. 234-235).   Her memory "for rote information" was deemed "somewhat better" (Tr. 235).   She demonstrated an "impaired" ability in executive functioning and auditory perception (Tr. 237).   Nonetheless, her performance suggested a "low risk when operating a motor vehicle" (Tr. 237).   She did not show signs of malingering (Tr. 240).   Dr. Bracieszewski assigned Plaintiff a GAF of 45[1] (Tr. 241).   The following month, Plaintiff sought emergency treatment for shortness of breath after receiving an epidural injection (Tr. 303, 305-306).   The same month, Dr. Mekai-Vekima noted that Plaintiff "looked good," but was eating and sleeping "a lot" (Tr. 326).

In February, 2008, Plaintiff sought psychiatric counseling (Tr. 445-446).   Steven

---

[1]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.   American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

Gotlib, M.D. noted that Plaintiff reported irritability and the side effect of constipation from psychotropic drugs (Tr. 443). The following month, Dr. Gotlib noted that Plaintiff reported "problems with mood, anxiety, energy, concentration, memory, judgment, goal setting, organization, and . . . temper" as a result of the May, 2007 accident (Tr. 441). In May, 2008, an EMG found the presence of radiculopathy at S1 (Tr. 343). Dr. Sinka found that back surgery was not warranted (Tr. 341). In July, 2008, Dr. Mekai-Vekima, M.D. opined that Plaintiff was unable to work from December 1, 2007 forward as a result of "chronic pain and numbness" of the legs (Tr. 321). In October, 2008, cardiac testing for a vasovagal symtoms of dizziness indicated that Plaintiff's synoptic episodes were attributable to a "neurocardiogenic mechanism" (Tr. 329-320, 339). She was encouraged to increase her fluid intake (Tr. 329). The following month, MRIs of the cervical spine and brain were essentially normal but an MRI of the lumbar spine showed a disc herniation at L4-L5 (Tr. 346-347). Occupational therapy notes from the same period recommended the use of wrist bands to remind Plaintiff of when she was cooking and a purse size calender (Tr. 350). In November, 2008, neurological surgeon Lucia Zamorano, M.D. noted that Plaintiff was oriented to "person, place, and time" with clear speech and intact memory to immediate, recent, and remote events" (Tr. 373). She showed no mental deficits (Tr. 373).

In January, 2009, Dr. Gotlib noted that Plaintiff reported a grease fire in her kitchen after she became distracted after putting a pan on the stove (Tr. 404). She noted that her forgetfulness caused kitchen mishaps on two other occasions (Tr. 404). The following month, Plaintiff reported paranoia and anxiety while driving in the rain (Tr. 401). In March,

2009, Plaintiff underwent a hemilaminectomy to remedy a disc herniation at L4-L5, performed without complications (Tr. 352, 357).  The following month, Dr. Kim found that Plaintiff was recovering "nicely" from surgery (Tr. 358).  The same month, rehabilitation specialist Lyn Peyton, MA, noted that Plaintiff's forgetfulness had caused  multiple kitchen fires (Tr. 363).  Peyton noted that Plaintiff's cognitive abilities were compromised by post surgery pain medication (Tr. 363).  Peyton noted that Plaintiff's boyfriend and mother were supportive (Tr. 364).  In May, 2009 physical therapy notes state that Plaintiff still required the use of a cane but that her gait was normal (Tr. 448).  In June, 2009, Dr. Gotlib noted that all post surgery tests were "normal" (Tr. 383).

## 2.  Non-Treating Sources

A January, 2008 a non-examining Residual Functional Capacity Assessment (physical) performed on behalf of the SSA found that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 frequently; sitting, standing, and walking for six hours in an eight-hour workday; and unlimited pushing and pulling (Tr. 245).  She was limited to occasionally climbing of ramps and stairs but precluded from all ladder, rope, and scaffold climbing (Tr. 246).  She was deemed able to balance, stoop, kneel, crouch, and crawl on a frequent basis (Tr. 246).  The Assessment found the absence of manipulative, visual, and communicative limitations but found that Plaintiff should avoid exposure to hazards such as machinery or heights (Tr. 248).  Plaintiff's allegations were deemed "partially" credible (Tr. 249).

The same month, Thomas M. Horner conducted a consultive psychological evaluation

of Plaintiff on behalf of the SSA (Tr. 254-259).  Plaintiff reported that she was "adjusting" to recurring dizziness (Tr. 254).  She stated that she intended to re-enroll in community college courses the following term (Tr. 254).  Dr. Horner observed that Plaintiff's dress was neat and a normal gait and speech (Tr. 255).  He found Plaintiff's prognosis "stable," assigning her a GAF of 60[2] (Tr. 258).

The same month, Rochelle R. Baron-Wong, reviewing Dr. Horner's findings, found that Plaintiff could perform "simple, unskilled work" (Tr. 260).  Leonard C. Balunas, PhD, performed a Psychiatric Review Technique, finding the presence of a cognitive impairment and depression (Tr. 263, 265).  Plaintiff's activities of daily living and social functioning were deemed mildly impaired and concentration, persistence, and pace, ("CPP") moderately impaired (Tr. 272).  A Mental Residual Functional Capacity Assessment, also performed by Dr. Balunas, found moderate limitations in the ability to understand or carry out detailed instructions, maintain concentration for extended periods, or respond appropriately to changes in the work setting (Tr. 277).  Dr. Balunas concluded that Plaintiff "[was] able to perform work-related tasks involving 1 and 2 step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting" (Tr. 278).

### C.     Vocational Expert Testimony

VE Evelyn Hartman classified Plaintiff's past work as a injection molding machine

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

operator as semiskilled at the light exertional level (as performed); material handler, unskilled/heavy; numerical control machine operator, semiskilled/light (as performed); and inventory clerk, semiskilled/light[3] (as performed) (Tr. 46).  The ALJ then posed the following set of limitations to the VE, taking into account Plaintiff's age, education,  work background, and "mental impairments that reduce her RFC to unskilled capable only:"

> [N]o more than light work with additional limitations for no ropes, ladders, or scaffolds, and occasional climbing.  She also has some sort of syncope, dizziness, and this is going to require that she avoid hazards in the workplace, and the precautions similar to what is given to procedure type precautions?

(Tr. 47).

The VE replied that the above limitations precluded Plaintiff's former jobs but would allow the performance of the light unskilled work of a small products bench assembler (10,800 in the regional economy); garment bagger (9,500); and housekeeper (8,700) (Tr. 48).  She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 48).  In response to questioning by Plaintiff's attorney, the VE testified that if Plaintiff's claims that she was unable to lift more than five pounds and

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

needed to recline several times a day were fully credited, she would be unable to perform any work (Tr. 48-49).

**D.     The ALJ's Decision**

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of "degenerative disc disease, obesity, affective disorder and organic mental disorder" determining however that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 13-17).   Adopting the findings of the May, 2006 Psychiatric Review Technique, the ALJ found that Plaintiff experienced mild limitations in daily living and social functioning and moderate difficulties in CPP (Tr. 18). He found that Plaintiff retained the following residual functional capacity ("RFC"):

> [T]o lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday and push and/or pull (including operation of hand and foot controls) consistent with her strength limitations.  The claimant's ability to perform the full range of light work is reduced by [the] inability to climb ramps/stairs on more than an occasional basis and inability to ever climb ladders, ropes or scaffolds.  The claimant must also avoid all exposure to hazards such as machinery and heights.  Although the claimant has a mild cognitive disorder, she is able to perform work related tasks involving one and two step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting.

(Tr. 20).  Adopting the VE's job findings, the ALJ found that although Plaintiff was unable to perform her past relevant work, she could perform the jobs of small products bench assembler, garment bagger, and housekeeper/cleaner (Tr. 24-25).

After exhaustively discussing Plaintiff's claimed limitations, the ALJ found her

-10-

allegations of disability "not entirely credible" (Tr. 20-22). He noted that imaging studies post-dating the March, 2009 surgery did not support her claim that she was unable to lift more than five pounds (Tr. 21). The ALJ cited Plaintiff's statement to Dr. Braciszewski that she experienced dizzy spells every other day "and usually only . . . in the evenings" (Tr. 22). Despite a mild cognitive disorder, the ALJ observed that Plaintiff was able to prepare simple meals, shop, pay bills, keep track of appointments, and count change (Tr. 22).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

-11-

884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The RFC

Plaintiff argues that the RFC composed by the ALJ is not supported by substantial evidence.  *Plaintiff's Brief* at 7-15.  She contends that the ALJ failed to adequately explain his findings pertaining to her cognitive limitations.  *Id.* at 8-10.  She argues further that the

ALJ did not address her medication side effects or limitations created by syncope and dizziness in crafting the RFC. *Id.* at 10-11. Plaintiff also asserts that the RFC is tainted by the ALJ's failure to explain his reasons for adopting non-examining findings over the opinions of treating sources. *Id.* at 11-12.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*quoting* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. *See* 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, *5 (RFC must be based on all relevant evidence).

I start by noting that ALJ Orr conducted an exceptionally thorough analysis of Plaintiff's treating history, daily activities, and testimony. After having completed my own thorough review of the transcript, I find no grounds for reversible error.

Plaintiff appears to argue that while the ALJ discussed treating material (including evidence supporting a disability finding) at length (Tr. 11-17), the RFC does not contain all of the limitations found by the treating sources. For example, the ALJ noted that Plaintiff told Dr. Gotlib that she had gotten lost once running in her neighborhood and forgot that she left food on the stove until smelling smoke, yet found that her forgetfulness did not prevent her from performing a limited range of simple work (Tr. 16, 19-20).

Substantial evidence supports the ALJ's RFC. Contrary to Plaintiff's position, the

ALJ's reasons for finding that she could nonetheless perform a range of work is well supported and well explained. In assessing Plaintiff's psychological limitations, the ALJ noted that Plaintiff could keep most doctor's appointments, attend to personal care activities without reminders, pay bills, shop, and prepare meals (Tr. 18). Although Plaintiff notes that she neglected to turn off the stove on three occasions (Tr. 404), by her own account, these fairly isolated mishaps did not prevent her from preparing meals on a daily basis (Tr. 18).

Likewise, the ALJ's credibility determination amply supports the finding that Plaintiff's allegations were not completely credible. He noted that despite the alleged memory deficits, Plaintiff did not need reminders to take her medication or attend appointments (Tr. 22). The ALJ also noted that treating sources had encouraged her to remain active (Tr. 22). He found that Plaintiff's claim that she required daily naps was unsupported by the record (Tr. 22). Although Plaintiff now contends that the ALJ did not account for her medication side effects in performing the credibility determination, the ALJ noted that at the time of hearing she generally relied on over-the-counter pain medication and although she occasionally took prescribed medication, she generally tried to avoid the long term use of drugs creating side effects (Tr. 22).

Plaintiff's assertion that the ALJ did not consider her limitations as a result of dizziness is contradicted by his paragraph-long discussion of the condition (Tr. 17). Admittedly, while a reference to dizziness is included in the hypothetical limitations posed to the VE, the condition is not mentioned in the RFC (Tr. 20). Nonetheless, the RFC accounted for limitations as a result of dizziness and syncope by precluding work involving

-14-

heights and hazards (Tr. 20).  The ALJ noted elsewhere that Plaintiff had not undergone balance rehabilitation and did not take drugs for the condition (Tr. 17, 329).  While Plaintiff also faults the ALJ for supporting his finding by noting that her dizzy spells occur mostly in the evening (Tr. 22) the medical evidence does not support Plaintiff's testimony that she fainted on a daily basis.  While she reported recurrent dizziness, there is some question as to whether she actually fainted subsequent to an episode shortly following the May, 2007 accident  or that dizzy spells would interfere with a limited range of light work.

As to the treating physician analysis, I disagree with Plaintiff's argument that the ALJ did not provide adequate reasons for rejecting Dr. Mekai-Vekima's July, 2008 opinion that Plaintiff was disabled beginning in December, 2007 (Tr. 23, 321).  Plaintiff takes issue with the ALJ's reasoning that Plaintiff was recovering normally from the March, 2009 surgery and that "it typically takes between six and twelve months to recover from such a surgery" (Tr. 23),  arguing that her recovery could take longer than the typical recover period.   However, the ALJ permissibly noted that Plaintiff's claims of continued limitation stood at odds with objective testing and her limited use of pain medication (Tr. 22-23).  The ALJ also noted that imaging studies created in the two years proceeding the surgery showed no evidence of stenosis or other conditions suggesting the inability to perform a range of light work (Tr. 23). The ALJ observed that examining source findings made prior to surgery indicated she did not require the use of a cane and exhibited a normal gait[4] (Tr. 21).

---

[4]

Although not raised by the ALJ, I note further that Dr. Mekai-Vekima wrote at least one prior work release at Plaintiff's request. Two months prior to Plaintiff's car accident, she

Plaintiff's final argument that the ALJ erred by adopting the non-examining January, 2008 assessments over more recent treating records is also without merit. First, as discussed above, the administrative decision contains an exhaustive review of the treating records, including material created after January, 2008. Notably, while Plaintiff criticizes the ALJ's reliance on earlier consultive and non-examining sources, her own neurological surgeon observed in November, 2008 that she showed no mental defects and was oriented to "person, place, and time" with clear speech and intact memory to immediate, recent, and remote events" (Tr. 373). The ALJ acknowledged Dr. Gotlib's later findings that Plaintiff had problems with "mood, anxiety, energy, concentration, memory, and judgment," but also cited the psychiatrist's finding that Plaintiff's symptoms had improved with psychotherapy (Tr. 16). The ALJ also noted that Plaintiff's continued ability to perform self-care activities, pay bills, and prepare meals stood at odds with claims of disabling psychological problems (Tr. 22-23). Likewise, while Plaintiff notes that the January, 2008 physical assessment adopted by the ALJ did not have benefit of later records showing a large disc herniation, the ALJ acknowledged a November, 2008 imaging study showing a disc herniation at L4-5 (Tr. 15), but also noted that one month after surgery, Plaintiff stated that her pain was under "reasonable control" and that multiple imaging studies showed normal results (Tr. 16).

### B. The Hypothetical Question

Plaintiff also submits that the ALJ's hypothetical question to the VE did not

---

issued a work release on the basis of "depression, stress, [and] anxiety" (Tr. 328).

adequately reflect her mental limitations. *Plaintiff's Brief* at 14-15.  She notes that while the RFC includes the statement that she "has a mild cognitive disorder" limiting her to "one and two step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting," (Tr. 20),  the hypothetical question merely states that Plaintiff "has mental impairments that reduce her RFC to unskilled capable only." *Id.* at 14 (citing Tr. 47).  Citing *Edwards v. Barnhart,* 383 F. Supp. 2d. 920 (E.D. Mich. 2005), Plaintiff contends that the ALJ's failure to account for her moderate deficiencies in concentration, persistence and pace ("CPP") invalidate the VE's job findings. *Id.* at 14-15.

As a rule, the failure to account for moderate concentrational deficiencies in the hypothetical question constitutes reversible error. While the ALJ need not use talismatic language or include the phrase "moderate deficiencies in concentration, persistence, and pace" in the hypothetical to avoid remand, *see Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001), "unskilled work," or "simple work" standing alone, may be insufficient to account for moderate concentrational impairments. *See Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007) (Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996).  More recently in *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516-517 (6th Cir. 2010), the Sixth Circuit held that the hypothetical restrictions of "simple and repetitive tasks" did not fully address the plaintiff's moderate pacing restrictions.

-17-

However, in the present case, the hypothetical question to the VE does not present grounds for remand. First, while the question posed to the VE need not include talismatic language or a recitation of the claimant's maladies, ALJ Orr went further than required by stating that her work abilities were compromised by a "mental impairment" (Tr. 47). The VE, having listened to Plaintiff's entire testimony, would clearly have interpreted "mental impairment" to refer to concentrational limitations as a result of the May, 2007 car accident. Again, though not required, the ALJ also included limitations as a result of dizziness or syncope in the hypothetical question. The fact that the VE's job findings were limited to Specific Vocational Preparation ("SVP") 1 and 2 positions, as discussed further below, indicates that he accounted for Plaintiff's degree of mental impairment when making his job findings (Tr. 48).

Second, while Plaintiff cites *Edwards, supra,* for the general proposition that the hypothetical question ought to have been more detailed, *Edwards* turns on the finding that the VE's mostly quota-driven job findings (assembly, packing, sorting) were not responsive to the plaintiff's moderate limitations in pace. *Id.* 383 F. Supp. 2d at 930-931. In contrast here, the DOT job description for at least two of the three job findings, (garment bagger and housekeeper) do not involve production quotas. This case is also distinguishable from *Ealy,* in which the Court held that the ALJ impermissibly "streamlined" the fuller version of the concentrational deficiencies adopted from the medical transcript to "simple and repetitive," thereby eliminating critical impairments. 594 F.3d at 516-517. Here, the ALJ's finding of moderate concentrational deficiencies is drawn from the January, 2008 PRT by Dr. Balunas.

-18-

The VE's job findings, taking into account Plaintiff's underlying mental impairment, are responsive to these limitations. Dr. Balunas concluded elsewhere that Plaintiff "[was] able to perform work-related tasks involving 1 and 2 step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting" (Tr. 278). None of the VE's job findings, discussed in more detail below, exceed the limitations set forth by Dr. Balunas.

Moreover, the VE provided a DOT job listing for each of the three positions. Plaintiff does not state how the present RFC would prevent her from performing any of these positions or explain why the facts of this particular case require a more detailed hypothetical question to adequately account for her own moderate limitations in CPP.  *See Lewicki v. Commissioner of Social Sec.* 2010 WL 3905375, *3 (E.D.Mich.2010)(failure to "explain why the facts of [the] particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace," defeats argument for remand); *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich.2011)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich. 2008))("no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration").

Indeed, the position of small bench assembler (DOT code 739.687-030) requires only rudimentary math and language skills and an SVP of 2, indicating that the job skill could be obtained by anything from a  short demonstration up to a month of training.  The DOT states

that the job of garment bagger (DOT code 920.687-018), also requiring only rudimentary math and language skills, has an SVP of 1, indicating that the position is learned by a short demonstration only. The position housekeeper/cleaner (DOT code 323.687-014) with an SVP of 2 requires only rudimentary math and language skill. Thus, even assuming that the ALJ's omission of certain hypothetical limitations constituted error, Plaintiff has not shown how a remand for further fact-finding would change the result. *See Rabbers v. Comm. Soc. Sec.,* 582 F.3d 647, 669 (6th Cir.2009).

In conclusion, I note that my recommendations to uphold administrative findings should not be interpreted to trivialize Plaintiff's legitimate health concerns. Nonetheless, in the present case, the ALJ's thorough decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [DE #10] be GRANTED, and that Plaintiff's Motion for Summary Judgment [DE #9] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 22, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 22, 2012.

s/Johnetta M. Curry-Williams
Case Manager