UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILYNCIA D. GREER,

        Plaintiff,                               Civil Action No.
                                                      11-CV-10330
vs.

                                                      HON. MARK A. GOLDSMITH
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER (1) ACCEPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (4) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This is a social security case. Plaintiff Filyncia D. Greer appeals from the final determination of the Commissioner of Social Security that she is not disabled and, therefore, not entitled to disability insurance benefits. The matter was referred to Magistrate Judge R. Steven Whalen for all pretrial proceedings. The parties filed cross motions for summary judgment. On February 22, 2012, Magistrate Judge Whalen issued a Report and Recommendation ("R&R"), recommending that the Commissioner's motion be granted and that Plaintiff's motion be denied. Plaintiff has filed timely objections to the R&R. The Commissioner has not responded, and the time to do so has expired. The matter is now ready for decision.

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Having done so, and for the

reasons that follow, the Court will (1) accept in part and reject in part Magistrate Judge's R&R, (2) sustain in part and overrule in part Plaintiff's objections to the R&R, (3) deny the Commissioner's motion for summary judgment, and (4) grant in part Plaintiff's motion for summary judgment.

## II.  BACKGROUND

The background of the case is adequately set forth in the R&R, and need not be repeated here.

## III.  ANALYSIS

Plaintiff advances three objections in support of her position that the decision of the ALJ is not supported by substantial evidence.  The Court's discussion of the second objection disposes of the first objection.[1]  The Court addresses the latter two objections, in turn.

### B.  Second Objection

In her second objection, Plaintiff argues that the ALJ did not properly account for her syncope-related symptoms in concluding that Plaintiff could work.  The Court disagrees.

The record contains the following significant evidence relating to Plaintiff's syncope condition.

- On July 23, 2007, Plaintiff treated with Luke Kim, M.D., who noted that Plaintiff was "having difficulty with headache, dizziness, [and] passing out spells."  Dr. Kim concluded: "I feel that she [Plaintiff] has a closed head injury and she needs to see a neurologist for closed head injury and fainting spells."  A.R. 221.

- On August 6, 2007, Plaintiff treated with Erik Sinka, D.O., who diagnosed postconcussion syndrome, and "syncope and recent ongoing dizziness."  Dr. Sinka noted that he "suspect[s] this is mild vasovagal syncope, which can be a part of the postconcussion syndrome."  A.R. 192-193.

---

[1] The only aspect of the first objection that takes issue with a conclusion made by the ALJ is related to the frequency of Plaintiff's dizzy spells, a topic that is covered in the Court's discussion of Plaintiff's second objection.

- On September 18, 2007, Plaintiff treated with Terry Braciszewski, Ph.D, a licensed psychologist. At this examination, Plaintiff reported that she experiences dizzy spells and loss of consciousness approximately every other day and occasionally late in the evening. A.R. 210.

- On October 17, 2007, Plaintiff again treated with Dr. Kim, who noted that Plaintiff "continues to have significant dizziness and lightheadedness." A.R. 218.

- On January 8, 2008, U. Gupta, M.D. completed a physical residual functional capacity assessment of Plaintiff. A.R. 243-251. In the report, Dr. Gupta acknowledged Plaintiff's headaches, dizziness, and syncope, stating: "She has mild headaches, dizziness and syncope. Dr suspected a mild vasovagal syncope as part of postconcussion syndrome." A.R. 245. After reviewing Plaintiff's medical file, Dr. Gupta concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk (with normal breaks) for a total of six hours in an eight hour workday, sit (with normal breaks) for a total of about six hours in an eight hour workday, and push/pull on an unlimited basis. A.R. 245. He further concluded that Plaintiff could climb ramps/stairs occasionally, never climb ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl. A.R. 246.

- On October 17, 2008, Plaintiff treated with Jihn Han, M.D. and Michelle Loomis, A.P.R.N., who administered a tilt table test. The test was positive, confirming a diagnosis of syncope. A.R. 329, 332. Nurse Loomis recommended a number of dietary modifications and that Plaintiff "lie down should symptoms occur." A.R. 332.

- On November 7, 2008, Plaintiff again treated with Dr. Sinka, who acknowledged the positive tilt table test and stated that the test "proves that [Plaintiff's] symptoms are due to vasodepressor syncope." Dr. Sinka recommended that any neurologic follow-up be on an as-needed basis. A.R. 337-38.

In his written decision, the ALJ acknowledged and discussed all the evidence set forth above relating to Plaintiff's syncope condition. In formulating Plaintiff's residual functional capacity, the ALJ adopted the assessment fashioned by Dr. Gupta. The ALJ, following Dr. Gupta's assessment, accommodated Plaintiff's syncope symptoms in the residual functional capacity as follows:

> The claimant's ability to perform the full range of light work activity . . . is reduced by inability to climb ramps/stairs on more than an occasional basis and inability to ever climb ladders, ropes or scaffolds. The claimant must also avoid all exposure to hazards such as machinery and heights.

A.R. 20.

In her objection, Plaintiff argues that the ALJ did not adequately address the impact of her syncope condition on her ability to work. Plaintiff highlights her testimony that she experiences dizziness every other day, arguing as follows:

> If [Plaintiff's dizziness] required plaintiff to take unscheduled breaks or stop working, even on a weekly basis, that would likely be too much for an employer. Similarly, if plaintiff became dizzy and fell, she could further injure herself on any of the jobs found suitable for her by the ALJ. These potentialities were never considered by the Magistrate Judge, or by the ALJ . . . . However, they should have been. This case should be remanded for such consideration.

Objection at 4.

The Court finds the objection unpersuasive. Notably, none of the physicians who treated Plaintiff for her syncope condition recommended that Plaintiff limit her activities as a result of the condition. In fact, both Nurse Loomis (the administrator of the tilt table test) and Dr. Sinka (a neurologist who treated Plaintiff for her syncope) essentially told Plaintiff to stay active. Nurse Loomis wrote that Plaintiff should "[r]esume [her] usual activity as tolerated." A.R. 330. Dr. Sinka likewise told Plaintiff to "try to stand as much as possible, in order to aid her recovery." A.R. 194. The record contains no medical evidence suggesting that Plaintiff's syncope symptoms would produce work limitations above and beyond those included in the residual functional capacity. Nor does the record contain medical evidence from Plaintiff's treating physicians conflicting with Dr. Gupta's assessment, as it relates to Plaintiff's syncope condition. For these reasons, the Court concludes that substantial evidence supports the ALJ's fashioning of Plaintiff's residual functional capacity as it relates to the limitations stemming from Plaintiff's syncope condition, and overrules Plaintiff's second objection.

### C.  Third Objection

For a vocational expert's testimony to constitute substantial evidence that a significant number of jobs exists in the economy, "the question[s] must accurately portray a claimant's physical and mental impairments." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2011). In her third objection, Plaintiff argues that the ALJ's residual functional capacity assessment contained significant limitations that were not presented to the vocational expert through the hypothetical question. Specifically, in articulating Plaintiff's residual functional capacity, the ALJ determined that Plaintiff has a "mild cognitive disorder," and that "she is able to perform work related tasks involving one and two step instructions with limited need for sustained concentration and only occasional, minor changes in the work setting." A.R. 20. In the hypothetical question posed to the vocational expert, the ALJ stated only that Plaintiff "has mental impairments that reduce her [residual functional capacity] to unskilled capable only." A.R. 47. Plaintiff argues that the hypothetical question is flawed because it does not take into account the full extent of her mental impairments, as determined by the ALJ to be credible. Namely, Plaintiff argues that the hypothetical question does not take into account the finding that Plaintiff can only perform work involving one-step and two-step instructions, with limited need for sustained concentration and only minor changes in work setting.

In his R&R, the Magistrate Judge engaged in a thorough analysis of this issue, ultimately finding Plaintiff's arguments unpersuasive. R&R at 17-20. Upon de novo review, the Court disagrees with the Magistrate Judge's analysis and conclusion. The case law is clear that it is sometimes – but not always – the case that a hypothetical question restricting a claimant to simple unskilled work does not adequately account for a claimant's determined moderate limitations in concentration, persistence, or pace. Whether an unskilled work restriction in the hypothetical

question accounts for a claimant's moderate limitations in concentration, persistence, or pace turns on whether the term "unskilled work," as defined in the regulations, encompasses all of the claimant's determined limitations. In other words, the inquiry is whether a hypothetical question that accounts for the claimant's mental impairments with only an "unskilled work" limitation sufficiently accounts for the full extent of the claimant's mental limitations.

Two case examples are illustrative. The residual functional capacity in Latarte v. Commissioner of Social Security, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009), recognized that the claimant was limited in her ability to understand, remember, and carrying out complex, detailed instructions; yet, the hypothetical question posed to the vocational expert contained only an unskilled work restriction. The court held that the hypothetical question "accurately described the [claimant's] moderate limitations" because the definition of unskilled work[2] encompassed all of the claimant's limitations, as found credible by the ALJ: "Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment." Id.

Conversely, the residual functional capacity assessment articulated by the ALJ in Ealy, a

---

[2] Unskilled work is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

case on which Plaintiff relies, limited the claimant's ability to sustain attention to complete simple repetitive tasks to two-hour segments over an eight-hour workday; however, the hypothetical question posed to the vocational expert contained only a restriction limiting the claimant to "simple, repetitive tasks and instructions in non-public work settings." The Sixth Circuit held that the hypothetical question "failed to provide the vocational expert with a fair summary" of the mental limitations determined by the ALJ to be credible and, accordingly, instructed the district court to remand the case for a new step-five determination.

The present case is much more similar to Ealy than to Latarte. Here, the residual functional capacity crafted by the ALJ recognizes three limitations related to Plaintiff's mental impairments. First, Plaintiff cannot perform tasks involving more than "one [or] two step instructions." Second, Plaintiff cannot perform jobs requiring more than a "limited need for sustained concentration." Third, Plaintiff cannot perform jobs entailing more than "occasional, minor changes in the work setting." A.R. 20. The hypothetical question posed to the vocational expert takes into account the first limitation (one-step or two-step instructions) because the question uses the term unskilled work, the definition of which reasonably encompasses that limitation. See Latarte, 2009 WL 1044836, at *3 ("Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment."). However, the hypothetical question does not take into the second limitation – limited need for sustained concentration – because the definition of unskilled work does not contain a concentrational limitation. Because this element of the residual functional capacity was not incorporated into the hypothetical question through the ALJ's use of the phrase "unskilled capable only" or otherwise, the Court is left wondering whether Plaintiff can really perform the jobs listed by the vocational expert in response to the hypothetical question – small products bench

assembler, garment bagger, and cleaner of housekeeping – in light of a significant concentrational limitation, found credible by the ALJ, but omitted from the hypothetical question.

The hypothetical question on which the ALJ relied in this case does not take into account the full extent of Plaintiff's determined concentration-related limitations. Therefore, the vocational expert's response thereto cannot be used to carry the Commissioner's burden of proving the existence of jobs that Plaintiff can perform. Accordingly, Plaintiff's third objection is sustained, and the case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

The Magistrate Judge reached a contrary conclusion. The Magistrate Judge recognized that failure to account for credible moderate concentration-related deficits in the hypothetical question may constitute a basis for remand, but he determined that remand is unnecessary here for several reasons. First, the Magistrate Judge noted the ALJ's use of the phrase "mental impairments" in the hypothetical question, and concluded that "[t]he [vocational expert], having listened to Plaintiff's entire testimony, would clearly have interpreted 'mental impairment' to refer to concentrational limitations as a result of the May, 2007 car accident." R&R at 18. The Magistrate Judge's conclusion here is speculative. Moreover, what the vocational expert may or may not have inferred from the proceedings is irrelevant; when the Commissioner attempts to satisfy its step-five burden through the use of a hypothetical question, the question "must accurately portray a claimant's physical and mental impairments." Ealy, 594 F.3d at 516. The one here did not.

Additionally, the Magistrate Judge distinguished Ealy, a case on which Plaintiff relies. However, the Court is not persuaded that the case is materially different from the present case. The Magistrate Judge found Ealy inapplicable here because the vocational expert's job findings (i.e., small products bench assembler, garment bagger, and cleaner of housekeeping) do not exceed

the limitations set forth by Leonard Balunas, Ph.D, the practitioner on which the ALJ relied when pronouncing Plaintiff's residual functional capacity. This reasoning is unpersuasive for two reasons. First, the Court does not know how much concentration is required of a small products bench assembler, garment bagger, and cleaner of housekeeping. It may be that Plaintiff's concentrational limitations would have impacted the vocational expert's testimony. Moreover, the Magistrate Judge's reasoning misses the point, which is that the hypothetical question on which the ALJ relied is flawed, and thus cannot be utilized to carry the Commissioner's burden of proving the existence of jobs that Plaintiff can perform.

Finally, the Magistrate Judge stated that Plaintiff has failed to explain how the residual functional capacity pronounced by the ALJ "would prevent her from performing [the positions of small products bench assembler, garment bagger, and cleaner of housekeeping] or explain why the facts of this particular case require a more detailed hypothetical question to adequately account for her own moderate limitations . . . ." R&R 19. The demand for explanation made of Plaintiff here impermissibly shifts the step-five burden from the Commissioner to Plaintiff. Plaintiff is not required to make any showing at step five; the burden to show the existence of jobs that Plaintiff can perform rests solely on the Commissioner. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). To the extent Lewicki v. Commissioner of Social Security, No. 09-11844, 2010 WL 3905375 (E.D. Mich. Sept. 30, 2010), a case on which the Commissioner relies, holds otherwise, the Court does not follow it.

### III. CONCLUSION

For the reasons discussed above, (1) the Magistrate Judge's R&R is accepted and adopted in part and rejected in part; (2) Plaintiff's objections to the R&R are sustained in part and overruled in part; (3) the Commissioner's motion for summary judgment (Dkt. 10) is denied; and (4)

Plaintiff's motion for summary judgment (Dkt. 9) is granted in part. The case is remanded for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g), sentence four.

SO ORDERED.


Dated: March 29, 2012             s/Mark A. Goldsmith
    Flint, Michigan               MARK A. GOLDSMITH
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2012.

                                          s/Deborah J. Goltz
                                          DEBORAH J. GOLTZ
                                          Case Manager